# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, et al., ex rel. PEGGY RYAN, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| v. | : | No. 05-3450 |
| | : | |
| ENDO PHARMACEUTICALS, INC., | : | |
| | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, et al., ex rel. MAX H. WEATHERSBY, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| v. | : | No. 10-2039 |
| | : | |
| ENDO PHARMACEUTICALS, INC., | : | |
| | : | |
| Defendant. | : | |

FILED
OCT - 1 2014
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, et al., ex rel. GURSHEEL S. DHILLON, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| v. | : | No. 11-7767 |
| | : | |
| ENDO PHARMACEUTICALS, INC., | : | |
| | : | |
| Defendant. | : | |

## <u>MEMORANDUM</u>

**ROBERT F. KELLY, Sr. J.**                **OCTOBER 1, 2014**

Presently before this Court are Relator, Gursheel Dhillon's ("Dhillon"), pro se "Motion to

Set Aside Courts [sic] Decision and for Reconsideration of Appeallate [sic] Bond by Three Judge

ENTERED
OCT - 1 2014
CLERK OF COURT

1

Panel," and the Response in Opposition filed by Relator Peggy Ryan ("Ryan"). For the following reasons, Dhillon's Motion is denied.

## I.   **BACKGROUND**

Due to the extensive factual background of this litigation provided in the previous Memorandum Opinions of this Court, we address solely the facts underlying Ryan's instant Motion.[1] This litigation emanated from three separate *qui tam* actions filed by Relators, Ryan, Max Weathersby ("Weathersby") and Dhillon, alleging that Endo Pharmaceuticals, Inc. ("Endo") promoted the drug Lidoderm for uses that were neither approved by the Food and Drug Administration nor medically accepted, thus causing false claims to be submitted to federal healthcare programs.[2] On February 21, 2014, the United States of America (the "Government") elected to intervene on behalf of the Relators for settlement purposes. (See Gov't's Notice of Election to Intervene, Feb. 21, 2014.) On this same day, the Relators entered into a Settlement Agreement, whereby Endo agreed to pay approximately $171.9 million to resolve the alleged False Claims Act violations. (See Gov't's Mem. on the Eligibility of Relators, at 1.)

After extensive briefing by the Government and the parties, we held that Ryan, as the first relator to file claims against Endo, was the sole relator eligible to recover the funds attained through the Settlement Agreement. (See Order, June 23, 2014.) In reaching this determination,

---

[1] The full factual background for this litigation can be found at United States ex rel. Ryan v. Endo Pharmaceuticals, Inc., No. 05–3450, 2014 WL 2813103 (E.D. Pa. June 23, 2014).

[2] In Latin, the phrase *qui tam* is short for "*qui tam pro domino rege quam pro se ipso in hac parte sequitur*," which translates as, "who pursues this action on our Lord the King's behalf as well as his own." United States ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 509 n.1 (3d Cir. 2007) (quoting Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 769 n.1 (2000)); see also Black's Law Dictionary (9th ed. 2009). Thus, a *qui tam* action permits private parties to bring suit to enforce the law on the Government's behalf and rewards successful plaintiffs with part of the recovery. United States ex rel. Zizic v. Q2Administrators, LLC, 728 F.3d 228, 231 n.1 (3d Cir. 2013) (quoting United States ex rel. Springfield Terminal Ry. Co. v. Quinn, 14 F.3d 645, 647 n.1 (D.C. Cir. 1994)).

we found that the first-to-file rule and the public disclosure ban precluded Dhillon from participating in the recovery of any of the funds. <u>See</u> <u>U.S. ex rel. Ryan</u>, 2014 WL 2813103, at *9-10.

On July 21, 2014, the Court became aware, through the filing of a Notice of Appeal, that Dhillon was appealing our decision granting Ryan sole relator status to the United States Court of Appeals for the Third Circuit ("Third Circuit").[3] (<u>See</u> Dhillon Notice of Appeal.) Four days later, the Third Circuit stayed Dhillon's appeal until the post-decision motions filed by Dhillon were adjudicated by this Court.[4]

Upon receiving the Notice of Appeal, Ryan filed a Motion for Appellate Bond. (<u>See</u> Ryan Mot. for App. Bond.) In order to preserve her ability to collect the costs of litigation that she will possibly be entitled to under Federal Rule of Appellate Procedure 39 and 28 U.S.C. § 1920, Ryan sought the imposition of an appellate bond in the amount of $25,000. (<u>Id.</u> at 5.) According to Ryan, an appellate bond was warranted in this case because "Dhillon's litigation history indicates that he will likely endeavor to undertake a long and costly appeal, regardless of merit (or lack thereof) of his position, and he is unlikely to pay costs even if so ordered by the Third Circuit or any other court." (<u>Id.</u> at 4.) Ryan supported this contention by providing extensive factual background relating to Dhillon. (<u>Id.</u>) In <u>U.S. ex rel. Ryan v. Endo Pharma., Inc.</u>, Nos. 05-3450, 10-2039 & 11-7767, 2014 WL 4209219 (E.D. Pa. Aug. 25, 2014), the Court

---

[3] At the time of filing the Notice of Appeal, Dhillon was represented by counsel. (<u>See</u> Dhillon Notice of Appeal.) However, Dhillon is currently proceeding pro se.

[4] At that time, the Third Circuit was referring to two post-judgment motions filed by Dhillon in this matter. These were a Motion for Reconsideration and a Motion to Strike, which have already been decided in two Memorandum Opinions of this Court.

held that an appellate bond was warranted in this case. [1] Ryan, 2014 WL 4209219, at *2. However, the Court found that the $25,000 bond sought by Ryan was excessive, and reduced it to $10,000. Id. at 3.

On September 8, 2014, Dhillon filed the instant Motion seeking reconsideration of our Order requiring an appellate bond. (See Dhillon Mot. for Recon. of App. Bond.) Four days later, Ryan filed a Response in Opposition to Dhillon's Motion. (See Ryan Resp. in Opp'n.)

## II.  STANDARD OF LAW

Motions for reconsideration are governed by Federal Rule of Civil Procedure 59(e). See Fed. R. Civ. P. 59(e). The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010). Accordingly, a judgment may be altered or amended if the party seeking reconsideration demonstrates one of the following narrowly defined circumstances: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available at the time of the Court's judgment; or, (3) the need to correct a clear error of law or to prevent manifest injustice. See Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). "Mere dissatisfaction with the Court's factual or legal rulings . . . does not meet the manifest injustice standard; the motion for reconsideration should be more than a forum to express dissatisfaction with the result ordered in the Court's opinion." Kansas City Fire &

---

[1] In this Opinion, the Court found that the four factors to be considered in determining the necessity of an appellate bond all favored imposition of such a bond. See U.S. ex rel. Ryan, 2014 WL 4209219, at *2-3. These factors include: (1) whether the amount of the bond is necessary to assure adequate security; (2) the risks that the appellant will not pay the costs if it loses the appeal; (3) the appellant's financial ability to post the bond; and (4) whether the amount of the bond will effectively preclude pursuit of the appeal. See Dewey v. Volkswagen of Am., Nos. 07-2249 & 2361, 2013 WL 3285105, at *2 (D.N.J. Mar. 18, 2013).

4

Marine Ins. Co. v. Consol. Rail Corp., 97-8134, 1999 WL 497232, at *1 (E.D. Pa. July 14, 1999). Due to the strong interest by the judiciary in the finality of its decisions, the reconsideration of a court's judgment is an extraordinary remedy, and therefore, should be granted sparingly. See In re Commonwealth's Mot. to Appoint Counsel, No. 13-510, 2013 WL 5781732, at *1 (M.D. Pa. Oct. 25, 2013); Conway v. A.I. DuPont Hosp. for Children, No. 04-4862, 2009 WL 1492178, at *2 (E.D. Pa. May 26, 2009).

## III.   DISCUSSION

In the instant Motion, Dhillon seeks reconsideration of the Court's Order requiring an appellate bond in the amount of $10,000. Reconsideration is only authorized in three narrowly confined circumstances. See Max's Seafood Café, 176 F.3d at 677. The impetus for Dhillon's Motion for Reconsideration is his belief that the Court Order requiring an appellate bond was "contrary to the law and evidence of the case and this constitutes a clear error of law." (Mot. for Recon., 2.) As a preliminary matter, we note Dhillon's pro se status, and the fact that the Motion is rambling, disjointed, rife with conclusory assertions, and, often incomprehensible. This Opinion marks the best effort of the Court to extrapolate legal arguments in support of the Motion for Reconsideration.

Dhillon first argues that Ryan's Motion for Appellate Bond was untimely and procedurally incorrect because Ryan failed to seek a stay and injunction from the Court of Appeals or seek permission from this Court. (Mot. for Recon., 2.) In support of this notion, Dhillon cites Federal Rule of Civil Procedure 13(g), which applies only to crossclaims against a co-party, and is wholly inapplicable to this case. See Fed. R. Civ. P. 13(g). Despite this extraneous citation, it is clear that the law does not support Dhillon's argument. Appellate bonds

5

are issued by the District Court, and do not require a stay and/or injunction from the Court of Appeals before issuance. See Fed. R. App. P. 7 ("In a civil case, a district court may require appellant to file a bond.") As such, Dhillon's argument contradicts the explicit powers and procedures set forth in the Federal Rules of Appellate Procedure regarding the issuance of appellate bonds.

In his second argument, Dhillon reiterates his financial inability to pay the required bond.[2] (Mot. for Recon., 8.) Underlying this argument is Dhillon's contention that it was Ryan's "duty to provide prima faciae [sic] evidence and not Relator Dhillon's duty to show that Relator Dhillon has the ability to pay such a bond." (Id.) This statement confuses the burden, and, if true, would illogically shift the burden away from the party in possession of the necessary financial information. See Adsani v. Miller, 139 F.3d 67, 79 (2d Cir. 1998); see also In re General Elec. Co. Sec. Litig., 998 F. Supp.2d 145, 151 (S.D.N.Y. 2014) (holding that the evidentiary burden is on the party invoking an inability to pay and that conclusory statements are not sufficient to satisfy this burden); Dewey, 2013 WL 3285105, at *2. Despite being alerted to this fact, Dhillon has again failed to produce any evidence other than conclusory assertions of his inability to pay. See U.S. ex rel. Ryan, 2014 WL 4209219, at *2. In fact, the only new evidence offered by Dhillon is a topical reference to the general state of recession in the economy of the United States and the resulting reduction in household income. (Mot. for Recon., 8.) While the Court does not dispute the veracity of this claim, it is clearly not the type of specific, personalized evidence required to prove an inability to pay. See In re Gen. Elec. Co., 998 F.

_____

[2] The Court notes that we took into consideration the costs associated with defending the appeal by Ryan, and Dhillon's financial ability to pay the appellate bond. In recognition of these interests, we reduced the bond amount from the $25,000 sought by Ryan to $10,000. See U.S. ex rel. Ryan, 2014 WL 4209219, at *3.

Supp. 2d at 151. As such, Dhillon has failed to demonstrate any "clear error of law." Max's Seafood Café, 176 F.3d at 677.

Next, Dhillon argues that it was a "clear error of law" to mandate an appellate bond where the request was not itemized by Ryan, and furthermore, that the bond is simply a request for attorneys' fees. (Mot. for Recon., 5.) This claim is both factually and legally inaccurate. First, Dhillon has not cited to any case that requires the itemization of costs before ordering the imposition of an appellate bond, and the Court is not aware of any such legal precedent. Second, the Court clearly stated that the law within this Circuit does not allow for the inclusion of attorney's fees. See U.S. ex rel. Ryan, 2014 WL 4209219, at *3 (citing Hirschensohn v. Lawyers Title Ins. Corp., No. 96-7312, 1997 WL 307777, at *2 (3d Cir. June 10, 1997)). However, Ryan did not request attorney's fees, and our decision to impose a $10,000 appellate bond reflects only the recognizable costs allowed within this Circuit.[3]

Finally, Dhillon again attempts to attack the affidavit of F.B.I. Agent Chris Mulhall ("Mulhall") through a Motion for Reconsideration, which now alleges that the Court's decision on this matter was biased.[4] However, "a Plaintiff may not overcome the high hurdle for

---

[3]The Third Circuit has interpreted costs under Federal Rule of Appellate Procedure 7 for appellate bond to include only the expenses enumerated in Federal Rule of Appellate Procedure 39 and 28 U.S.C. § 1920. See Hirschensohn, 1997 WL 307777, at *2-3; McDonald v. McCarthy, 966 F.2d 112, 115 (3d Cir. 1992). Conspicuously absent from the catalog of costs permitted in the calculation of an appropriate sum for an appellate bond is attorneys' fees. As a result of this omission, the Third Circuit has held that attorney's fees are not to be included as costs under Rule 7b. See Hirschensohn, 1997 WL 307777, at *2 (holding that attorney's fees are distinct from the 'costs' defined by Rule 39).

[4] In U.S. ex rel. Ryan v. Endo Pharma., Inc., Nos. 05-3450, 10-2039 & 11-7767 (E.D. Pa. Aug. 25, 2014), Dhillon attempted to attack the statement of Mulhall, which was attached to Ryan's Motion, as "not authentic or true." Id. In attempting to undermine the veracity of Mulhall's statement, Dhillon included a statement from an employee of Endo, which he believed supported his claim for eligibility. However, we found that the law was clear that this statement should have been included within Dhillon's original motion. Id. (citing Prusky v. Prudential Ins. Co. of Am., 44 F. App'x 545, 548 n.1 (3d Cir. 2002); In re Linerboard Antitrust Litig., MDL No. 1261, 2008 WL 4461914, at *3 (E.D. Pa. Oct. 3, 2008), aff'd, 361 F. App'x 392 (3d Cir. 2010)).

reconsideration . . . merely by alleging bias because this Court issued a ruling with which Plaintiff disagrees." Brown v. Lyons, No. 10-3458, 2011 WL 743847, at *1 (E.D. Pa. Feb. 22, 2011) (citing Scocca v. Cendant Mortg. Corp., 197 F. App'x 112, 114 (3d Cir. 2006)). Consequently, we find no merit to this argument.

## IV.    CONCLUSION

Reconsideration is an "extraordinary remedy," which is granted rarely. See In re Commonwealth's Mot. to Appoint Counsel, 2013 WL 5781732, at *1. After careful examination of the arguments raised by Dhillon in the instant Motion, it is clear that there are no grounds for reconsideration. Consequently, Dhillon's Motion is denied.

An appropriate Order follows.